GARY M. RESTAINO
United States Attorney
District of Arizona
JOSEPH F. BOZDECH
California State Bar No. 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Joseph.Bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br>v.<br>Seven Firearms,<br>　　　　　　Defendants *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 924(d) for the forfeiture of any firearm involved in or used in violation of, or a conspiracy to violate, 18 U.S.C. § 922(a)(6), providing false information in connection with the purchase of firearms.

2. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 924(d) for the forfeiture of any firearm involved in or used in violation of, or a conspiracy to violate, 18 U.S.C. § 924(a)(1)(A), knowingly making a false statement with respect to information required to be kept by a Federal Firearms Licensee Dealer (FFL).

3. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j), and 28 U.S.C. §§ 1355(b) and 1395, as acts and omissions occurring in the District of

Arizona give rise to this forfeiture action. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h)

## THE DEFENDANTS *IN REM*

4. The defendants *in rem* consist of:

   a. Anderson Manufacturing AM-15 Pistol, Cal: 223, SN: 22070800;

   b. Glock Inc. 43 Pistol, Cal: 9, SN: AFNE275;

   c. Glock Inc. 42 Pistol, Cal: 380, SN: AGUM598;

   d. Pioneer Arms Corporation (Radom, Poland) Sporter Rifle, Cal: 762, SN: PAC1171054;

   e. Pioneer Arm Corporation (Radom, Poland) Sporter Rifle, Cal: 762, SN: PAC1176477;

   f. Century Arms International VSKA Rifle, Cal: 762, SN: SV7122820; and

   g. Century Arms International VSKA Rifle, Cal: 762, SN: SV7122756

(collectively the "defendant property") seized on August 4, 2022. The defendant property is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

## INTRODUCTION

5. The defendant property consists of firearms purchased from an Arizona FFL on August 4, 2022.

6. Fernando Reyes Jr. (Reyes) filled out a Firearm Transaction Record (ATF Form 4473) for the purchase of the defendant property. In filling out ATF Form 4473, Reyes attested that he was the true purchaser of the defendant property, and that he was not purchasing the firearms on behalf of another person.

7. Reyes purchased the defendant property on behalf of others. The false information Reyes provided as to the true purchaser of the firearms was intended to and did deceive the FFL, who transferred the firearms to Reyes.

2

8. The defendant property is therefore forfeitable under 18 U.S.C. § 924(d)(1), as it consists of firearms involved in a violation of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 924(a)(1)(A).

**FACTUAL BACKGOUND**

9. On August 4, 2022, ATF Special Agents Kyle Dandoy (SA Dandoy) and Jesus Alvarez (SA Alvarez) received a phone call from an employee at FFL Jones & Jones ("J & J"), located at 17490 S. Avenue E, Somerton, Arizona, 85350.

10. The J & J employee informed agents about a suspicious transaction made by Reyes, who attempted to purchase four AK-47 style rifles and was accompanied by four or five other subjects.

11. The J & J employee disclosed that Reyes previously purchased firearms from J & J within the last month.

12. In connection with the August 4, 2022 transfer, Reyes filled out ATF Form 4473 informing the FFL that he was the actual buyer and provided a Yuma, Arizona address as his residence.

13. Based on training and experience, agents are aware that ATF Form 4473 provides instructions as to residence address and a very specific warning in bold that "You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you." The actual buyer's name and residence address are material to the lawfulness of the transfer. By providing false information on the form, the FFL will be unable to initiate a background check on the true buyer nor confirm the true buyer is a resident of Arizona.

14. For each firearm constituting the defendant property, Reyes falsified the ATF Form 4473 by attesting that the information on the form, including that Reyes was the actual buyer of the defendant property and that he was not acquiring any of the defendant property on behalf of another person, was true, correct, and complete, when he

was in fact purchasing the firearms for someone else. Reyes also did not put his correct address on the form.

15. If the FFL was aware that Reyes was purchasing the firearms for another, the FFL would not have transferred the firearms to him.

16. The J & J employee further informed ATF agents that Reyes received a delayed status through the National Instant Criminal Background Check System (NICS).

17. Based on training and experience, law enforcement agents are aware that The Gun Control Act of 1968 (Pub. L. 90-618, 82 Stat. 1213, *as amended*) was enacted in part to ensure that persons prohibited from possessing firearms could not easily obtain them at FFLs. To comply with federal law, an FFL must initiate a background check on individuals prior to transferring a firearm. These regulations help deter prohibited persons from obtaining firearms and allows for the tracing of firearms to the initial purchaser if the firearms are used in a crime.

18. Prior to August 4, 2022, Reyes was recorded by J & J's security surveillance system receiving cash from another individual inside of the FFL. Reyes used the cash to purchase the firearms these individuals selected.

19. On one occasion, Reyes and a juvenile accompanied another individual to J & J where the other individual purchased several firearms. Reyes left the FFL carrying the firearms.

**August 4, 2022 Surveillance at Jones & Jones**

20. On August 4, 2022, ATF Agents drove to J & J and attempted to surveil a gray Kia Optima (the "Kia") bearing Arizona license plate CRL0800 and its passengers.

21. ATF agents, with assistance from the United States Customs and Border Protection (CBP) and Air Unit (Omaha) (collectively "investigators"), witnessed the Kia stop at a Burger King located at 620 E. Main Street, Somerton, Arizona 85350 before finally travelling to an apartment complex located at 500 S. Somerton Avenue, Somerton, Arizona 85350. The Kia parked and the passengers exited the vehicle.

22. After a short time, investigators observed the Kia depart from the apartment complex and traveled to 5644 S. Grijalva Avenue, Somerton, Arizona 85350.

23. While surveilling the Kia, J & J contacted investigators and informed them that Reyes was picking up the firearms. Reyes was not a passenger in the Kia when it departed the apartment complex and had found another ride back to the FFL.

24. At J & J, Omaha witnessed an individual place large boxes inside the cab and bed of a gray Ford F-150 bearing Arizona license plate ZNA7DA (the "Ford").

25. Investigators followed the Ford back to the apartment complex located at 500 S. Somerton Avenue.

26. SA Alvarez observed Reyes exit the passenger side of the Ford and walked toward apartment C101 while holding two Glock cases.

### Interview with Reyes

27. SA Alvarez exited his vehicle and contacted Reyes and Raul Martinez (R. Martinez), the driver of the Ford.

28. SA Alvarez identified himself as law enforcement and asked Reyes if he had a moment to discuss his firearms purchase.

29. Reyes stated it wasn't illegal to purchase firearms and he was headed to his home at apartment C101.

30. SA Alvarez asked Reyes how long he had lived at apartment C101. Reyes stated that he occasionally stayed at the apartment, but it belonged to his grandfather, R. Martinez. Reyes further stated that he lived on 1st Street in Yuma, Arizona. SA Alvarez did not question Reyes any further.

31. SA Dandoy read Reyes his Miranda Rights. Reyes understood his rights and was willing to answer questions.

32. A search of law enforcement databases revealed that the Somerton Police Department had previously arrested Reyes for the following:

    a. October 24, 2016 – Disorderly Conduct with a weapon, Aggravated Assault with a dangerous weapon, Aggravated Assault on a minor, and

5

endangerment. The status of these charges shows "No Complaint Filed" as of October 27, 2016;

b. July 1, 2017 – Misdemeanor Assault. The status of this charge shows a guilty disposition as of July 31, 2017; and

c. January 24, 2019 – Disorderly Conduct and Assault. The status of these charges shows court dismissal as of March 20, 2019.

33. A search of law enforcement databases revealed that the Yuma County Sherriff's Office arrested Reyes on February 5, 2017 for Aggravated Assault on a minor. As of August 5, 2022, there has not been an update on the status of this charge.

34. A criminal history query of Reyes revealed that he was charged on July 2, 2018 for Disorderly Conduct and Assault. These charges were dismissed on March 20, 2019.

35. At first, Reyes would not provide his address, but then told investigators that he resided at 2195 W 1st Street, Yuma, Arizona 85364 and lived there his entire life.

36. Reyes stated that he was currently unemployed but worked side jobs.

37. Investigators asked Reyes what he purchased at J & J that day. Reyes stated that he purchased AK-47s, a Glock 380, and a Glock 19X.

38. Investigators asked Reyes why he purchased several firearms. Reyes answered that he liked to collect firearms, but also purchased the firearms to protect his family.

39. Reyes was asked why he did not purchase any ammunition if the firearms were purchased to protect his family. Reyes stated that he did not have enough cash at that time but would purchase ammunition when necessary.

40. Agents explained that it did not make sense for Reyes to purchase firearms without also purchasing ammunition. Reyes maintained that he was low on funds and would buy ammunition later.

41. Agents asked Reyes about his drug history. Reyes admitted that he only smoked marijuana and he recently smoked on August 1, 2022.

42. Section 21.e of ATF Form 4473 states "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."

43. Agents explained to Reyes that the firearms and ammunition from the Ford were going to be seized since he violated ATF Form 4473 by admitting to smoking marijuana but marking "no" on Section 21.e.

44. Reyes voluntarily removed the firearms and ammunition from the Ford and provided them to ATF agents.

### Interview with R. Martinez and Search of Apartment C101

45. After speaking with Reyes, investigators interviewed R. Martinez, the driver of the Ford.

46. R. Martinez was read his Miranda Rights, stated "yes" to understanding his rights, and was willing to answer questions.

47. R. Martinez stated that he was the lease holder of apartment C101 and currently resided there with his family.

48. Investigators asked R. Martinez if Reyes lived in his apartment and paid bills. R. Martinez told investigators that his wife, son, and grandchildren lived in the apartment. R. Martinez confirmed that Reyes did not live in the apartment and did not pay any bills.

49. R. Martinez told investigators that Reyes showed up to his apartment and asked for a ride to J & J. R. Martinez agreed to take Reyes back but had no information on why Reyes was purchasing firearms.

50. R. Martinez explained that his nephew had been under investigation by the ATF Phoenix Division and was recently killed in Mexico after a firearm was seized by ATF. Investigators are aware that said firearm was valued at $16,000 and was supposed to be smuggled into Mexico.

51. After speaking with R. Martinez, investigators interviewed his son, Jonathan Martinez (J. Martinez), at apartment C101.

52. J. Martinez was read his Miranda rights, stated "yes" to understanding his rights, and was willing to answer questions.

53. J. Martinez told investigators that he has never purchased or possessed firearms.

54. J. Martinez further told investigators that Reyes was kicked out of his home located on 1st Street and confirmed that Reyes stayed at the apartment for a few days but did not live there.

55. Reyes listed his current address on the ATF Form 4473 he filled out for the purchase of the defendant property as 2195 W 1st Street, Yuma, Arizona 85364, but was not living there at the time he filled out ATF Form 4473 on August 4, 2022.

56. Investigators asked if there were any firearms inside of the residence. R. Martinez's grandson, Raul Villa (Villa), walked inside of the residence and brought out an AR-style pistol: Anderson, Model: AM-15, .223 caliber, Serial Number: 22070800. This firearm was purchased by Reyes per a J & J sales receipt dated July 29, 2022.

57. Investigators asked R. Martinez for consent to search the apartment to confirm there were no additional firearms. R. Martinez agreed but stated only two agents were allowed inside of the residence. R. Martinez escorted SA Dandoy and SA Alvarez inside of the apartment and watched as they searched.

58. ATF agents found multiple cases of ammunition stored in a hallway closet. R. Martinez believed the ammunition belonged to his nephew and agreed to abandon the ammunition as he did not want any problems that involved his nephew. None of the other adult occupants claimed the ammunition.

59. Agents seized the Anderson firearm, ammunition found in the hallway closet, and loaded magazine found in a bedroom.

8

**Review of Jones & Jones Surveillance Video Dated August 4, 2022**

60. On August 8, 2022, SA Dandoy collected and reviewed video surveillance from the FFL. The video showed Reyes arrive at J & J in the silver Kia Optima with Arizona license plate CRL0800 with Villa, Joshua Martinez Garcia (J. Martinez Garcia), Sergio Martinez Garcia (S. Martinez Garcia) and an Unknown Male.

61. Upon arrival, Reyes and J. Martinez Garcia entered the main building of J & J while Villa, S. Martinez Garcia, and the Unknown Male entered the showroom separate from the main building. The three individuals in the showroom browsed the different firearms.

62. Villa removed three firearms from the display rack. Villa handed one firearm to J & J employee, handed one firearm to the Unknown Male, and held on to a firearm himself. S. Martinez Garcia grabbed his own firearm from the display rack.

63. After the four firearms were selected, the subjects and J & J employee walked out of the showroom and into the main building where Reyes and J. Martinez Garcia waited.

64. On the surveillance footage, Reyes completed ATF Form 4473 and did not handle the four firearms selected by the individuals in the showroom.

65. After Reyes completed ATF Form 4473, he waited for his background check to be completed. Reyes ultimately received a delayed status through NICS and was told he would be contacted once the FFL received the results.

66. Surveillance video showed J. Martinez Garcia counted out money and paid for the four firearms selected in the showroom before the group left the FFL.

67. Reyes paid for two additional firearms with money given to him by Villa.

68. Approximately forty minutes after leaving the FFL, Reyes received a proceed status through NICS. J & J contacted Reyes and advised him that he could pick up the firearms.

69. When Reyes returned to J & J to pick up the firearms, he arrived in a silver Ford F-150 with Arizona license plate ZNA7DA driven by R. Martinez. The Ford was parked near the entrance of the FFL, which does not have video surveillance.

70. Reyes left the FFL with a total of six firearms. Reyes paid $4,454.16 in cash for the following firearms:

| MAKE | MODEL | CALIBER | SERIAL NUMBER |
|---|---|---|---|
| Century Arms | VSKA | 7.62x39 Rifle | SV7122756 |
| Century Arms | VSKA | 7.62x39 Rifle | SV7122820 |
| Pioneer Arms | Sporter | 7.62x39 Rifle | PAC1176477 |
| Pioneer Arms | Sporter | 7.62x39 Rifle | PAC1171054 |
| Glock | 43 | 9mm Pistol | AFNE275 |
| Glock | 42 | .380 Auto Pistol | AGUM598 |

71. After Reyes left J & J, investigators conducted their firearm interdiction.

**Review of Jones & Jones Surveillance Video Dated July 27, 2022 and July 28, 2022**

72. On August 18, 2022, SA Dandoy collected and reviewed video surveillance from J & J. The video showed Reyes made another multiple firearm purchase with other individuals.

73. On July 27, 2022, Reyes arrived at J & J in a black four-door Jeep driven by J. Martinez Garcia.

74. Reyes entered the showroom and immediately selected a firearm from the wall display. After the J & J employee placed the firearm on the display counter, Reyes exited the showroom and met with J. Martinez Garcia on the outdoor patio.

75. While Reyes completed ATF Form 4473, J. Martinez Garcia removed money from his pocket and placed it on the table in front of Reyes. Reyes grabbed the money on the table and put it in his own pocket.

76. After Reyes completed the form, Reyes paid for the firearm in cash, but did not receive the firearm since the background check was not complete.

77. Since the store was almost closed, the J & J employee told Reyes he would get a call once the background check was completed.

78. On July 28, 2022, Reyes returned to J & J accompanied by an Unknown Male.

79. Once again, Reyes selected a firearm from the display rack. Reyes checked the price tag, left the showroom, and returned to the vehicle. The vehicle appeared to be a black four-door Jeep like the one seen on surveillance the previous day. Due to the camera quality and positioning, it is unknown if Reyes spoke to someone at the vehicle.

80. Villa entered the FFL shortly after Reyes returned inside. Villa had what appeared to be U.S. currency in his left hand and passed it to Reyes as they shook hands.

81. The ATF Form 4473 was completed for one firearm the previous day, but three more firearms were added on July 28, 2022. Reyes paid $2,983.67 in cash for the following firearms:

| MAKE | MODEL | CALIBER | SERIAL NUMBER |
|---|---|---|---|
| Pioneer | Hellpup | 7.62x39 Pistol | PAC1176262 |
| Pioneer | Hellpup | 7.62x39 Pistol | PAC1176282 |
| Anderson | AM-15 | .223/5.56 Pistol | 21383762 |
| Anderson | AM-15 | .223/5.56 Pistol | 22070825 |

82. Reyes, Villa, and the Unknown Male left J & J.

83. However, shortly after, the Unknown Male returned to J & J and completed ATF Form 4473. The Unknown Male left again after the employee reviewed his completed form.

**Review of Jones & Jones Surveillance Video Dated July 30, 2022**

84. On September 7, 2022, SA Dandoy collected and reviewed video surveillance from J & J. The video showed J. Martinez Garcia purchase multiple firearms on July 30, 2022.

85. J. Martinez Garcia, Reyes, and Villa arrived at J & J in a dark colored sedan, but due to the camera angle, the make and model of the vehicle are unknown.

86. J. Martinez Garcia and Villa entered the showroom. J. Martinez Garcia pointed to a firearm on the wall and an employee made calculations on a calculator. While in the showroom, none of the firearms were removed from the wall.

87. According to J & J employees, the area of the wall J. Martinez Garcia pointed is where the AK style pistols are stored.

88. J. Martinez Garcia completed ATF From 4473 and listed 500 S. Somerton Avenue, Apartment C101, Somerton, Arizona 85350 as his address. After the background check completed, J. Martinez Garcia paid $2,557.89 in cash for the following firearms:

| MAKE | MODEL | CALIBER | SERIAL NUMBER |
|---|---|---|---|
| Pioneer | Hellpup | 7.62x39 Pistol | PAC1176438 |
| Pioneer | Hellpup | 7.62x39 Pistol | PAC1176257 |
| Pioneer | Hellpup | 7.62x39 Pistol | PAC1176397 |

89. J. Martinez Garcia, Reyes, and Villa left the FFL with the firearms in a dark colored sedan.

**Interview of J. Martinez Garcia**

90. On September 14, 2022, SA Dandoy received a telephone call from a CBP agent at the Calexico West Port of Entry who stated that J. Martinez Garcia was attempting to gain access into the United States.

91. Once at the Port, ATF agents were given a secured room to interview J. Martinez Garcia. J. Martinez Garcia was read the Advice of Rights and Waiver form (ATF 3200.4) and signed the form, indicating that he understood his rights.

92. J. Martinez Garcia stated that he currently lived with his girlfriend, Paola Guiza, in Somerton, Arizona and had been living there for two or three months.

93. J. Martinez Garcia claimed that before he started living with his girlfriend, he resided at 500 Somerton Avenue, Apartment C101, Somerton, Arizona 85350.

94. ATF agents asked J. Martinez Garcia if he recalled what he discussed with SA Dandoy on August 4, 2022. Garcia stated that he was at J & J with Reyes but arrived separately to check on ammunition.

95. ATF agents explained that video surveillance dated August 4, 2022 had been reviewed and confirmed J. Martinez Garcia arrived at J & J with Reyes in the Kia. J. Martinez Garcia claimed that the video was false, and he did, in fact, arrive separately.

96. ATF agents asked J. Martinez Garcia if he had spent any money at J & J on August 4, 2022. J. Martinez Garcia claimed that he did not.

97. SA Dandoy showed J. Martinez Garcia a photograph from video surveillance that showed J. Martinez Garcia paying an employee at J & J a large amount of cash. J. Martinez Garcia claimed he planned to buy a firearm that day, but Garcia was refunded the money after he paid because he did not complete the purchase.

98. While cooperative, ATF agents believe J. Martinez Garcia was still being deceptive as the surveillance video did not support his statements. J. Martinez Garcia did not attempt to purchase a firearm on August 4, 2022 because he did not complete an ATF Form 4473 that day.

99. Based on SA Dandoy's experience, J & J does not collect payment for a firearm until the background check is complete.

100. Due to his deception, ATF agents showed J. Martinez Garcia a photograph from the surveillance video dated July 27, 2022. The photograph showed J. Martinez Garcia giving money to Reyes while Reyes completed ATF From 4473.

101. J. Martinez Garcia claimed that he loaned Reyes money and that he provided Reyes the money to purchase the firearms seized by ATF on August 4, 2022. J. Martinez Garcia further claimed that he was given $10,000 after his father won $20,000 at a casino.

102. J. Martinez Garcia was asked if he purchased or owned any firearms. J. Martinez Garcia stated he pawned two firearms at an unknown pawn shop in Yuma, Arizona over a year ago.

103. SA Dandoy once again asked J. Martinez Garcia if he purchased any firearms other than the two firearms he sold at a pawn shop. J. Martinez Garcia was unable or unwilling to provide information for any other firearms he had purchased.

104. SA Dandoy read J. Martinez Garcia a list of the following firearms he purchased from J & J between April 29, 2022 to July 30, 2022:

| PURCHASE DATE | MAKE | MODEL | CALIBER | SERIAL NUMBER |
|---|---|---|---|---|
| April 29, 2022 | Glock | 17 Gen 5 | 9mm Pistol | BWRC849 |
| May 9, 2022 | Springfield | XDM | 9mm Pistol | BA615589 |
| May 9, 2022 | FNH | 509 | 9mm Pistol | GKS0235138 |
| May 9, 2022 | FNH | 509 | 9mm Pistol | GKS0225944 |
| May 9, 2022 | HK | HK45C | .45 ACP Pistol | 216-031162 |
| May 13, 2022 | Riley Defense | RAK-47 | 7.62x39 Rifle | B35388 |
| June 17, 2022 | Colt | LE6920 M4 | .223/5.56 Rifle | CR806949 |
| June 17, 2022 | Pioneer | Hellpup | 7.62x39 Pistol | PAC1175801 |
| June 17, 2022 | Pioneer | Hellpup | 7.62x39 Pistol | PAC1175845 |
| July 30, 2022 | Pioneer | Hellpup | 7.62x39 Pistol | PAC1176438 |
| July 30, 2022 | Pioneer | Hellpup | 7.62x39 Pistol | PAC1176257 |
| July 30, 2022 | Pioneer | Hellpup | 7.62x39 Pistol | PAC1176397 |

105. J. Martinez Garcia claimed that he had all the firearms at his home, but further claimed that he gave the Springfield to his uncle. However, J. Martinez Garcia stated he was getting the Springfield back.

106. J. Martinez Garcia was asked why he failed to mention these firearms when asked about his other firearm purchases. J. Martinez Garcia claimed he forgot about the other firearms because he was focused on what happened to his cousin who was killed in Mexico.

107. ATF agents showed J. Martinez Garcia a photograph of Reyes walking out of the J & J with the firearms J. Martinez Garcia purchased on July 30, 2022. J. Martinez Garcia claimed the firearms in the photograph were purchased by Reyes.

108. However, ATF agents explained to J. Martinez Garcia that the photograph was not from the surveillance video dated August 4, 2022. ATF agents further explained that the photograph was from surveillance video dated July 30, 2022, the day J. Martinez Garcia purchased three Hellpup pistols.

109. After ATF agents asked to see the firearms at J. Martinez Garcia's house. J. Martinez Garcia stated that he wanted to speak with his lawyer and ATF agents concluded their interview.

**Administrative Claim**

110. On August 23, 2022, ATF received a claim to the defendant property from Fernando Reyes Jr. The Interest in Property Information section of the claim states "please state your interest in each item of property listed . . ." Fernando Reyes Jr. responded, *"I want my firearms returned because not only do I have a collection but I have them in the case of ever needing to defend my family or myself. It is my constitutional right to own them as well."*

111. As supporting documentation for his claim, Fernando Reyes Jr. provided a one-page image of the sales receipt from Jones & Jones dated, July 29, 2022 and a two-page image of the sales receipt from Jones and Jones dated August 4, 2022. No additional documentation was provided.

**FIRST CLAIM FOR RELIEF**

The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 924(d) because it is firearms involved in or used in violation of, or a conspiracy to violate, or acquired in violation of 18 U.S.C. § 922(a)(6).

**SECOND CLAIM FOR RELIEF**

The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 924(d) because it is firearms involved in or used in violation of, or a conspiracy to violate, or acquired in violation of 18 U.S.C. § 924(a)(1)(A).

///

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that process issue for a warrant *in rem* for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 14th day of April 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*S/ Joseph F. Bozdech*
JOSEPH F. BOZDECH
Assistant United States Attorney